Ruffin, C. J.
 

 In the case of
 
 Dick
 
 v.
 
 Pitchford, 1
 
 Dev. and Bat. Eq. 480, the question arose upon a conveyance of negroes to one, in trust, annually to apply the profits to the use of the donor’s son, H. P., so that they should not be subject to be sold or disposed of by H. P., or the rents and profits anticipated by him, or
 
 in
 
 any manner subject to his debts; and it was held, that the son’s conveyance was, nevertheless, effectual to pass his interest, as
 
 cestui que trust,
 
 for the term of his life. The doctrine rests upon these considerations: that a gift of the legal property in a thing includes the
 
 jus disponendi,
 
 and that a restriction on that right, as a condition, is repugnant to the grant, and therefore void : And that, in a Court of Equity, a
 
 cestui que trust
 
 is looked on as the real owner, and the trust governed in this respect by the same rules which govern legal interests ; and, consequently, that it is equally repugnant to equitable ownership that the
 
 *133
 
 owner should not have the power of alienating his pro-’ perty. There is, indeed, an exception to that general rule, which is founded on the peculiar incapacities of married women, and their subjection to their husbands. A gift in trust for the separate use of a married woman, or in contemplation of her marriage, may be coupled with a prevision against alienation or anticipation; for, in truth, the restriction is imposed forher protection, and, as she is
 
 sub potestate
 
 viri, it will more frequently operate as a beneficial protection, than in prejudice to her. But restraints, as conditions merety, upon alienation by a person
 
 sui juris
 
 have been held in a great number of eases to be null, as regards property given through the medium of a trust; and several of them are cited in
 
 Dick
 
 v.
 
 Pitchford.
 
 In the case of
 
 Brandon
 
 v.
 
 Robinson,
 
 18 Ves. 429, for example, Lord Eldon, after speaking of the exception in respect to
 
 feme coverts,
 
 sa3rs, “ but the case ■of a disposition to a man, who, if he has the property, has the power of aliening, is quite different.” It is true, that property may be given in trust upon a condition, so expressed as to amount to a limitation, whereby the in- ‘ terest of the first taker ceases upon a particular event, and the property goes over to some other person in particular, or falls into the residue. But there is nothing like that here. By this will, the entire equitable ownership of the slaves and other personal effects, is given to the son Anderson, and of the land also, subject however, as to the last, to a contingent limitation over upon the event of Anderson’s dying without leaving issue living at his death, as the will must be read since the Act of
 
 1$27.
 
 Then, there is no doubt that the donee, Anderson/has, upon the principles and precedents mentioned, the absolute light to assign his interest in these gifts, and that his assignee would have the right to take the estates under his own control.
 
 /
 

 That being so, it follows, that the interest of the
 
 cestui que trust,
 
 whatever it may be, is Haile in this Court for
 
 *134
 
 bis debts. For it would be a shame upon any system of law, if, through the medium of a trust of any kind of contrivance, property, from which a person is absolutely entitled to a comfortable, perhaps an affluent support, and ■over which he can exercise the highest right of property, namely, alienation, and which, upon his death, would undoubtedly be assets, should be shielded from the creditors of that person during his life. There is no such reproach upon nor absurdity in our law; for we hold, that what-every interest a debtor has in property of any sort may be reached by his creditors, either at law or in equity, according to the nature of the property. Terms of exclusion of the donee's creditors, not amounting to a limitation of the estate, can no more repel the creditors, than a restraint upon alienation can tie the hands of the donee himself. 'Liability for debts ought to be, and is, just as much an incident of property, as the
 
 jus disponendi
 
 is ; for, indeed, it is one mode of exercising the power of disposition. This is the first occasion on which the point has come directly into judgment: but in the case of
 
 Bank of the State
 
 v.
 
 Forney,
 
 2 Ired. Eq. 184, the Court said, however anxiously the benefit of the donee personally may be looked
 
 to
 
 by the donor, the policy of the law will not permit property or a trust to be so given, that the donee may continue to enjoy it after his bankruptcy, or, in other words, against his creditors. In
 
 Brandon
 
 v.
 
 Robinson,
 
 there was a trust to pay dividends, from time to time, into the proper hands of a man or on his receipt, and that they should not be grantable or assignable by way of anticipation; and it was held, that this interest passed to assignees in bankruptcy : Lord Eldon remarking, that an attempt to give property, and to prevent creditors from obtaining any interest in it, though it be his, the debtor’s, could not be sustained; and that the gift must he subject to the incidents of property, and it could not be preserved from creditors, unless given to some one else, that is, limited over. Following that ease, was that
 
 *135
 
 of
 
 Graves
 
 v.
 
 Dolphin,
 
 1 Sim. 66, in which estates were devised in trust to pay an annuity to a son for his personal support for life, not liable to his debts, and to be paid from time to time into his own proper hands, and not to any other person, and his receipt only to be a discharge; and Sir John Leach declared, although the testator might have made the annuity determinable by the bankruptcy of his son, yet, as he had not done that, the policy of the law did not permit property to be so limited, that it should continue in the enjoyment of the donee, notwithstanding his bankruptcy; and therefore that the annuity passed under the commission. In the case of
 
 Piercy
 
 v.
 
 Roberts,
 
 1
 
 Mylne and Keen
 
 4, there was a discretion given to the trustee, but it was held not to make a difference. It was a bequest of £400 to executors, upon trust to pay the same to a son, in such smaller or larger portions, at such time or times, and in such way or manner, as they should in their judgment and discretion think best, and, upon the insolvency of the son, Sir John Leach, then Master of the Rolls, said, that the legacy could not remain in the hands of the executors, to be applied at their discretion, for the benefit of the legatee. He held that the discretion of the executors determined by the insolvency of the son, and the legacy passed by the assignment; for the insolvent being substantially entitled to the legacy, the attempt to continue in him the enjoyment of it, notwithstanding his insolvency, was in fraud of the law. In
 
 Snowden
 
 v.
 
 Dales,
 
 6 Sim. 524, the language of the will is still stronger against any absolute right in the donee. It was an assignment of a sum of money, in trust during the life of J. I). H., or during such part thereof as the trustees should think proper, and at their will and pleasure and not otherwise, and, at such times and in such sums as they should think proper, to pay the interest to him, or, if they should think fit, to pay it in procuring for him diet, apparel and other necessaries, but so that he should not have any right or title in or to such interest, other than
 
 *136
 
 the trustees should, in their absolute and uncontrolled power, discretion, and inclination, think proper and expedient, and so as no creditor of his should have any lien or claim thereon, in any case ; or the same be in any way liable to his debts, and disposition, or engagements — with a limitation over upon his death. The Vice Chancellor, Sir Lancelot Siiadwell, admitted it to be plain, the grantor did intend to exclude assignees in bankruptcy, and that it might have been effected, if there had been a clear gift over; but he said as there was nc> direction to the trustees, upon the bankruptcy of J. D. H., to withhold and accumulate the interest during his life, so as to-go over with the capital upon his death, that the. life interest of the bankrupt went to the assignees.
 

 The foregoing cases sufficiently establish, that by the use of no terms or art can property be given to a man, or to another for him, so that he may continue to enjoy it, or derive any benefit from it, as the interest, or his maintenance thereout or the like, and at the same time defy his creditors and deny them satisfaction thereout. The thing is impossible. As long as the property is his, it must, as an incident, be subject to his debts, provided, only, that it be tangible. The only manner in which creditors can be excluded, is to exclude the debtor also from all benefit from, or interest in, the property, by such a limitation, upon the contingency of his bankruptcy or insolvency, as will determine his interest, and make it go to some other person. It follows, that the interests of Anderson Mebane are liable to the plaintiff’s satisfaction, and that they must be. sold for that purpose, unless, within a reasonable time, the plaintiff’s debt should be otherwise paid. ' But, of course, the trustee is entitled, first, to be re-imbursed out of the fund any expenditures made by him
 
 bona fide,
 
 and his costs in this cause; and, in order to ascertain what may be thus due, and also what may remain due bn the plaintiff’s
 
 *137
 
 judgment for principal, interest, and costs, and his costs in this Court, there must be an enquiry by the Master.
 

 Per Curiam.
 

 Decree accordingly.