(46 Misc. Rep. 332.)

## SLATER v. SLATER et al.

(Supreme Court, Special Term, New York County. February, 1905.)

1. CONTRACT—CONSIDERATION—PERFORMANCE OF LEGAL DUTY.

Testator devised the residue of his estate to his widow, son, and brother as executors, in trust, to pay to the widow the balance of the rents and profits in lieu of dower, together with a portion of the income from certain investments, for her own use and the support of his son and daughter, the income being given to her absolutely to use as she might deem best, without any liability to account, and expressed a wish that the partnership business between himself and brother should be continued for the benefit of the estate. The Court of Appeals decided that on sale of the good will of the firm the purchaser would obtain the exclusive right to use the firm name, and, pending sale of the business, a compromise of the

differences between the estate and the surviving partner, who had resigned as executor, was effected and reduced to writing, and called the "store" agreement. The son refused to sign the same as executor, unless a writing called the "family" agreement was also executed, by which he and his sister were to receive a definite share in the estate. The latter agreement was executed by his mother under protest, and repudiated by his sister, whereupon the son signed the store agreement. The mother sued to set aside the family agreement, and it appeared that the consideration therefor was a signature of the son to the store agreement. *Held* that, whether the agreement was advantageous to the estate or not, it was the duty of the son to sign the store agreement as executor, and he could not exact from his mother any consideration for an act which as executor he was bound to perform.

2. WILL—CONSTRUCTION—PRECATORY TERMS—ENFORCEABLE INTEREST.

Where testator left the income of his estate to his widow absolutely, to use and apply as she might deem best, with a desire that the mother would support, educate, and maintain his children therefrom, no interest was created in such income, enforceable on the son's part, under which a certain definite share of his father's estate could be set apart to him.

Action by Cecilia L. Slater, executrix, against John J. Slater and another, to set aside a written assignment of the income of testator's estate bequeathed to plaintiff. Judgment for plaintiff.

See 80 N. Y. Supp. 363; 90 N. Y. Supp. 1114; 91 N. Y. Supp. 269.

John L. Lindsay (Roger Foster, of counsel), for plaintiff.
Shearman & Sterling (John A. Garver, of counsel), for defendants.

DOWLING, J. John Slater and James Slater, brothers, for upward of 40 years had been partners in the retail shoe business on and near Broadway, in this city, conducting a large and profitable business, which at the time of John Slater's death, on June 23, 1901, was earning an approximate annual profit of $30,000. He left him surviving a widow, the plaintiff, and his son and daughter, the defendants herein. His will was duly admitted to probate July 2, 1901, and contained, among other provisions, the following:

"Third: I give, devise and bequeath unto my executrix and executors hereinafter named, or the survivor of them, or the person or persons who may be appointed or qualify as such in their places or stead, all the rest, residue and remainder of my property, real and personal, and wheresoever situated. In trust, however, and to and for the uses and purposes hereinafter named, viz., * * * '1st. To pay over to my beloved wife during her natural life absolutely, and in her lieu and full satisfaction of her dower right in my real estate, the balance of the said rents, issues and profits arising from my real estate; also from said investments and all other sources for her own use and to enable her to support, educate and maintain our children, after deducting, however, therefrom the several sums of money as provided for hereinafter to be paid to my three sisters. My said wife is not to be liable to account in any manner or in any court for the use or application of the moneys which she may receive under this subdivision of this "third" clause and the same are given to her absolutely to use and apply as she may deem best and proper.' * * * Fifth. It is my will and desire, but I do not so direct, that the business now carried on by my brother, James, and myself as copartners be continued for the benefit of my estate so long as it may be practicable and profitable so to do."

The widow of decedent, his son, and James Slater were the executors named in said will, and duly qualified as such. Dissensions

arose between James Slater, the surviving partner, and the estate of his brother, and litigation ensued, which was finally settled by a decision of the Court of Appeals (Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605) holding that the right to use the firm name did not go to the surviving partner, but was an asset of the firm, to be disposed of for the partnership benefit, and that the purchaser of the firm assets would also obtain the good will of the firm, and this included, even as against the surviving partner, the exclusive right to use the name under which the firm did business. Accordingly, a sale of the business, stock, and good will of the firm of J. & J. Slater was advertised for sale under the direction of the court, any party to the action being at liberty to purchase at said sale, this including the defendant herein, John J. Slater. The sale was adjourned from time to time while negotiations were progressing between the estate and James Slater for an amicable settlement. Meantime defendant John J. Slater had been conferring with Mrs. Cardeza, a wealthy lady and a friend of his family of long standing, relative to inducing her to furnish sufficient funds to buy in the business for the estate, or for the estate and herself in partnership, the estate being without funds with which to either buy in the business or protect itself from a sale at a low price to an outsider or to James Slater. James Slater resigned as an executor, leaving mother and son the sole acting executors of the John Slater estate.

Concurrently with the disputes between James Slater and the John Slater estate, dissensions had arisen between John J. Slater and his mother. The son had been steadily discriminated against by his mother in favor of his sister; she had given him but little money, even though he was a chronic invalid, and was dependent for most of his support and that of his wife upon the bounty of a stranger in blood; his sister was hostile to him; the mother refused to answer her son's letters, and her mind had been poisoned against him by absurd or malicious stories; even his physical distress was used as a means of attack upon him. As a result of these conditions, John J. Slater was continually insisting on his demands for one-third of the income of his father's estate, which he had called for from his father's death. This his mother refused to give him, and he has received but little money from her. When he found himself debarred from seeing his mother, because of her absence from home under assumed names, he insisted still more strenuously on some written acknowledgment of what he deemed his right to one-third.

With this contest still undecided, a compromise of the differences between James Slater and the estate of John Slater had been brought about by the attorneys by which a corporation was to be organized to take over the business of J. & J. Slater, wherein James Slater was to take stock for his interest, and the John Slater estate was to have an interest continued in the business, receiving $25,000 in cash and $25,000 (one-fourth) of the stock of the new company. This settlement was not satisfactory to any of the John Slater heirs, but was finally accepted by them verbally as being the best procur-

able under the conditions. This agreement was reduced to writing, and is hereinafter called the "store" agreement. On January 6, 1904, it was submitted to the Slater heirs at their counsel's office, but, while accepted, was not then signed, John J. Slater first desiring the reduction to writing of his mother's admission of his share of his father's estate, and declining to sign the store agreement until that was done. Mrs. Cardeza in the interim had refused to advance any money to help the estate buy the business until John J. Slater had been given a written assignment of his share in the father's estate, and was able, ready, and willing to buy the business for herself. Mrs. Slater had also made her son, through an attorney, an offer to allow him 25 per cent. of the entire net income of the estate from all sources. The sale was advertised to take place on January 7, 1904.

The store agreement still remaining unsigned, it not being possible to make it effective without the signature of John J. Slater, as executor of his father's estate, and he refusing to affix the same until he had a written assignment of a one-third share of the income from the estate, the attorneys prepared a tentative agreement, assigning a percentage of the total net income of the John Slater estate to the son and daughter. This was the assignment, the subject of this suit, except that the amount was left blank. In its completed form it will be referred to as the "family" agreement. On January 6th John J. Slater refused to sign the store agreement unless the family agreement was signed with 33⅓ per cent. inserted as the share both of his sister and of himself. On January 7th, the day of the sale, he refused to sign the store agreement unless the family agreement gave him and his sister 29 per cent. each, that being the mean between the 25 per cent. offered by his mother and the 33⅓ per cent. demanded by him. With James Slater and Mrs. Cardeza at the store, prepared to buy, and a number of other persons present to attend the sale, with the estate without money to buy the business in, and her son refusing to sign the only possible settlement—the store agreement—the plaintiff finally yielded, and on the morning of the 7th signed the family agreement, still protesting against it, and asking her attorney's advice, even as she signed it, whether she could not set it aside. The family agreement was taken to the store, and, upon receiving the same, John J. Slater, as executor of his father's estate, signed the store agreement. The sale was thereupon adjourned until January 14th, and in the interim the corporation was organized, and on that date took over the business, which has since continued under the terms of the store agreement. The daughter repudiates the family agreement, and does not claim under it.

The only considerations that can be urged to support the family agreement are (a) the natural love and affection accompanying the relationship of mother and son; (b) the rights, if any, legal or moral, which John J. Slater had under his father's will to a share of the income of the latter's estate; (c) the signing by John J. Slater of the store agreement.

As to (a), it is sufficient to say that there is no evidence of the existence of any such feeling, and it is contradicted by the evidence of the state of feelings existing between mother and son, as well as by the mother's refusal to sign any paper recognizing her son's rights until under the pressure of her son's refusal to sign the store agreement.

As to (b), either John J. Slater had a right, under the provisions of his father's will, to some definite or certain part, large or small, of the income from his father's estate, or he had none. The provisions of the will in respect to the income have already been set forth. While there is the expression of a wish, or desire, or hope on decedent's part that his widow would support, educate, and maintain his children from the income of his estate, the will is not even precatory in terms, and further provides that the net income is given to the widow absolutely, to use and apply as she might deem best and proper, without any liability to account in any manner for her disposition thereof. This, in my opinion, removes the case from any of those where precatory terms have been held to create an enforceable interest, or where a charge or trust has been held to exist subject to which the estate passed. In the case of Collister v. Fassitt, 163 N. Y. 281, 57 N. E. 490, 79 Am. St. Rep. 586, upon which so much stress is laid by both sides, there was an absolute direction to the wife to use so much of the estate as she might in her discretion, from time to time, think best to use for the support and benefit of testator's niece, and the decision is based on the surrounding circumstances of the case, as well as on the entire scheme of distribution created by the will itself, the court distinguishing that from other cases, and quoting approvingly the saying that "no will has a brother." Id., page 286 of 163 N. Y., page 491 of 57 N. E. (79 Am. St. Rep. 586). Believing that no legal duty existed on the plaintiff's part, enforceable on her son's behalf, to set apart any definite share of his father's estate for him, I find such alleged consideration cannot be supported. If the son had any right, it could be established in an appropriate action; he could not create it by compulsion.

There remains, then, only the third consideration (c). James Slater stood ready and able to buy the business on January 7th; so did Mrs. Cardeza, who refused to buy for or with the estate unless the son was provided for by a written agreement from his mother; the estate had no funds sufficient to purchase the store; all the parties had agreed that the store agreement was the only hope for the retention by the estate of any interest in the business. John J. Slater's signature as executor was required to effect a settlement with James Slater, and he refused to sign until his mother executed the assignment in suit. It clearly appears as in the minds of all the parties that the real consideration for the mother's family agreement was to be the son's signing the store agreement. The latter was either advantageous or disadvantageous to the estate. If disadvantageous, John J. Slater had no right to injure the estate whereof he was executor in order to benefit himself personally, and should never have signed the store agreement, nor can he be

permitted to derive any advantage therefrom. If advantageous, it was his duty as executor (in pursuance of the expression of desire in his father's will that the interest of the estate in the business be continued) to sign the store agreement promptly and without other considerations. He could not equitably exact from his mother some consideration for doing what it was his duty as executor to do. Judgment for plaintiff, with costs, against defendant John J. Slater.

Judgment for plaintiff, with costs.