CLARKSON, J., not sitting.
The action was instituted in 1920 by plaintiff, the Bank of Union, against the Heath Cotton Company, a partnership composed of G. B., W. J., and G. C. Heath, and against G. B. and W. J. Heath as individuals, to recover the sum of $36,283.52, and some interest, due by note, and G. B. Heath being a nonresident, a warrant of attachment was issued and levied on certain tangible property of said defendant in Union County, and also on the remaining interest of said G. B. Heath in his father's estate undistributed and then in the hands of the executors and trustees under the will, to wit, H. B. Heath, W. H. Twitty, and others.
It appeared further that B. D. Heath, the testator and father of G. B., W. J. Heath, etc., died in the county of Mecklenburg, July, 1919, having made his last will and testament disposing of a large estate, devised and bequeathed chiefly to his surviving widow and sons and daughters, etc., and appointing, as stated, H. B. Heath, W. H. Twitty and others executors and trustees under his said will. That the original will was executed in September, 1904, and there were a number of codicils thereafter executed, the first being on 13 June, 1909. That in January, 1921, the garnishees, executors, etc., made formal answer admitting the qualification of the executors and that they held a large estate under the terms of the will of B. D. Heath, but averred, among other things that on a proper interpretation of said will none of said property in their hands or under their control was subject to an attachment or other process for the debts of the Heath Cotton Company or of G. B. Heath and W. J. Heath, or either of them. C. S., secs. 820, 821, etc.
That at August Term, 1922, of said court plaintiff recovered judgment against the cotton company and G. B. and W. J. Heath for the amount as claimed, $36,283.52, and some interest, and execution thereon having been first issued, plaintiff filed their petition in supplemental proceedings against the executors and widow and children, heirs at law and devisees and legatees under the will, who were all served with process, and in said petition alleged that the said executors under said will had in their control and keeping a large estate of their testator ready for distribution, and that as much as $100,000 each of said amount was due and owing defendants G. B. and W. J. Heath, which of right should be justly available to creditors, and which said executors refused to pay over. C. S., secs. 711, 712, etc.
The executors and trustees under the will, while denying that the estate was fully ready for distribution, admitted that they had a large estate in their hands subject to the provisions of the will of B. D. Heath, and again averred that by a proper construction of said will the portion which plaintiffs sought to subject to their said debt as the property of *Page 56 
G. B. and W. J. Heath did not belong to these parties but was held in the discretion of the executors, etc., for the support of said G. B. and W. J. Heath and their families, and not to be paid to them "If they should at the death of the testator and when they became twenty-one be incompetent, by reason of intemperance, bad habits or other cause, to manage their own affairs."
That the will of B. D. Heath is set out in full in the answer of the garnishees, is referred to and made a part of plaintiff's petition in supplemental proceedings, is recognized as controlling on the rights of the parties to this controversy by both plaintiffs and all of the defendants, and the portions of said will pertinent to the inquiry are the thirteenth, fourteenth and fifteenth items in the body of the will executed in 1904, and the first codicil thereto, in 1909, and are as follows:
"Item 13. After the payment of the legacies hereinbefore provided, I direct that my executors divide all the rest and residue of my estate, which is not specifically devised or bequeathed, into equal shares and pay over and deliver one of the said shares to my wife and one to each of my children (except as hereinafter otherwise provided). And in the event that any child shall die leaving a child or children, then such child or children shall represent the deceased parent and take the share that such parent would take under this will, if living, and if any child die before my death, leaving no children, such share shall be divided among my wife and all my surviving children in equal shares, as herein provided.
"In making the division provided for in this item, my executors are authorized to charge my wife and children with such sums as they may be due me as shown by notes in my possession at my death, or by accounts charged against them on book kept by me for that purpose, and the said sums shall bear interest, three per cent per annum, from the time they were loaned or advanced by me, except as to the sums prior to this will, loaned or advanced to my son B. W. Heath, and as to him, I direct on sums prior to this will that there be no interest charged, owing to the fact that he unfortunately lost all that I loaned or advanced him.
"I further direct that my executors shall hold as trustees the shares of such of my children as are under 21 years of age, and shall invest the same as in their judgment they deem best, and expend the income in the support and maintenance of my said children during their minority, and shall pay over to each one his or her share upon arriving at 21 years of age, subject, however, to the provisions hereinafter set forth.
"Item 14. I do not desire to discriminate against any of my children, but, owing to the habits of my son B. W. Heath, and owing to his *Page 57 
failure up to this time from a financial standpoint, I hereby direct that my executors, after deducting his indebtedness to me from what is given him under this will, shall pay one-fifth of his part to him as soon after my death as practicable, and the remaining four-fifths shall be held by my executors as trustees and invested by them in such manner as they deem best, and one-fourth of this remainder shall be paid by my executors to him at the end of every two years until the whole sum is paid: Provided,however, that if, owing to his habits and general conduct and demeanor, my executors do not in their judgment deem it for his best interest to make the payment to him, then they are authorized to withhold the payment of all or of such part of the principal as they deem best until such time as they may deem it best to pay it over to him. I direct, however, that in any event the income arising from his share shall be paid to him annually by my executors.
"Item 15. In addition to the specific directions given above in regard to my son B. W. Heath, I direct that if any of my sons should, at my death or at his arrival at full age, be incompetent by reason of intemperance, bad habits or other cause to manage his own affairs, and if any of my daughters shall, at my death or at the time she becomes 21, be married to a man who is, by reason of intemperance, bad habits or other cause, incompetent to manage his affairs, then I direct that the share of each of such sons and daughters shall be held and invested by my executors as trustees, and the income or profits arising therefrom shall be by the said trustee paid over for the support of such child and his or her family if any family there be, until such time as in the judgment of said trustees it shall be prudent to pay over and deliver to said child the part of my estate intended for him or her, and in the event that it shall not become prudent in the judgment of the said trustees to pay over the part to such child during his or her lifetime, then (upon the death of any such son) I direct that the amount be paid over to the wife and descendants of such son in such proportions as they would be entitled to under the statute of distributions, or if there be no descendants, then one-half to his wife, and the remaining half equally divided between my children, the descendants of any deceased child to represent their parent; and in the event that such son shall not leave either wife or descendants surviving him, then his share is to be divided at his death among my other children in equal shares, the descendants of any deceased child to represent their parents; and likewise, in the case of death of any daughter who shall leave an incompetent husband, then the share of such daughter shall be paid over and delivered to her children or descendants of deceased children, if any she leaves surviving her. And in the event that such daughter shall leave no child or descendant of deceased child, then the share intended *Page 58 
for such daughter shall be divided equally among my other children, the descendants of any deceased child to represent their parent.
"I desire that the question as to whether any son or the husband of any daughter may be competent to manage his own affairs under the provisions of this item shall be left to the sound discretion of said trustees, as likewise the question as to the time and manner of the payment of both the corpus and the income, and in the event of the death of all of said executors before the payment of all the legacies herein provided for, then such person as the last survivor among my executors may appoint under his will shall succeed such survivor as trustee, and shall be invested with all the power conferred upon my executors in this will; and in the event that the last surviving executor shall fail to make such appointment in his will, then such person as may be appointed by the proper authorities as administrator de bonis non cum testamento annexo shall succeed as trustee and be vested with the discretion and all the powers conferred on my executors in this will.
"Codicil or amendment to my will:
"Item 2. In my will, in which it provides for my wife and her and my children and their descendants, house and lot which is described is annulled and canceled for the reason since I made my will, for a certain sum, I unconditionally deeded to her two hundred feet front on the Lawyer's Road and that width back 300 feet to a ten-foot alley on which our present residence now stands, which more than compensates her for the annullment [annulment] of the above-described item. In item 14, in which is described conditions on which B. W. Heath is to be paid his part, I want the same conditions applied and carried out as to my sons Harry M. Heath, Gilbert B. Heath, and W. Joe Heath.
13 June, 1909. (Signed) B. D. HEATH.
 Witnesses: J. L. McCLINTOCK. MURL PICKARD. F. L. CROWELL."
That the executors in their answers further allege or admit that on or not long after their qualification they paid to G. B. and W. J. Heath the one-fifth of their estimated legacy as contemplated in item 14 of said will. That these parties were engaged in business on their own account at the time, but that, owing to losses suffered by them in 1920, they had dissipated all the property under their immediate control and incurred large indebtedness, and had showed themselves utterly incompetent to manage their affairs; and thereupon, at a meeting of the executors held in Charlotte, N.C. on 18 February, 1922, in the honest *Page 59 
exercise of the discretion conferred upon them by the will, they formally passed the following resolutions:
"Resolved, first, that after a careful investigation concerning the ability or competency of Gilbert B. Heath and W. Joe Heath, two of the legatees named in said will, to manage their own affairs, the said executors, as trustees, are of the opinion that neither the said Gilbert B. Heath or W. Joe Heath is competent, in the judgment of the said executors and trustees, to manage his own affairs in such a way as to reasonably conserve his own interest and preserve the property bequeathed for his benefit under said will.
"Resolved, second, that in the exercise of the judgment and discretion conferred upon and vested in said executors, as trustees, under and by the terms of said will, it has been this day determined and ordered by them that the share of said estate bequeathed for the use and benefit of each of said legatees, to wit, Gilbert B. Heath and W. Joe Heath, be held and invested by the executors, as trustees, and the income or profits arising therefrom shall be paid over annually, or oftener, if need be, for the support of the said Gilbert B. Heath and his family, and the support of W. Joe Heath and his family, respectively, during the lifetime of each, or until such time as said executors, acting as trustees, shall deem it prudent and wise to pay over the share of each, or either, in said estate, to him or them, respectively."
And aver further: "That said executors and trustees are now holding and intend to hold the parts of said estate intended for the use of said G. B. Heath and W. J. Heath, and their respective families, pursuant to the terms of the above-quoted resolution, until ordered by the court to do otherwise.
"Said executors and trustees admitted in entire frankness to the court that but for the exhibition on the part of said W. J. Heath and G. B. Heath of their inability to manage their own affairs, and to properly preserve and conserve the interests of said estate intended for their use and benefit of their respective wives and children, as exhibited by the reckless, imprudent, and foolish speculations and dealings heretofore referred to, by which they lost not only one-fifth of the share of the estate intended for the benefit of each, but incurred very large liabilities in addition thereto, these respondents would in all likelihood have continued to pay over to the said G. B. Heath and W. J. Heath the installments intended for their use and benefit, and the use and benefit for their respective families, pursuant to item 14 of the will.
"But after having so discovered the incompetency of the said G. B. Heath and W. J. Heath to properly manage their own affairs on account of the transactions hereinbefore referred to, said executors and trustees, in the honest exercise of the discretion conferred upon them *Page 60 
by the said will, concluded that unless they refused to pay to the said G. B. Heath and W. J. Heath, or either of them, further or other funds bequeathed for their use, and the use and benefit of their families under said will, that the said G. B. Heath and W. J. Heath would, in a very short time, on account of the lack of business judgment and capacity to properly manage their own affairs, have squandered and dissipated all the property bequeathed by the said B. D. Heath for the support and maintenance of the said G. B. Heath or W. J. Heath and their respective families, and the education of their children; and for this cause, and for this cause alone, the respondents determined to withhold further payment to either the said G. B. Heath or W. J. Heath, but, on the contrary, decided to withhold the balance of the shares in said estate, bequeathed for their use and benefit, and the use and benefit of their families, in accordance with, and pursuant to, the terms of the resolutions hereinbefore quoted.
"That if the executors as trustees, under the facts hereinbefore narrated, were not authorized under the terms of the will of the said B. D. Heath to make the necessary payments to the said G. B. Heath and W. J. Heath, but on the contrary held the shares bequeathed under the said will for the use and benefit of said G. B. Heath and W. J. Heath in accordance with, and pursuant to, the terms of the resolutions hereinbefore quoted, then the said executors as trustees stand ready to obey any final order of the court made in the premises."
That G. B. Heath makes no answer, but his wife and their children, having been duly made parties, answer and aver that said G. B. Heath has proved himself entirely incompetent to conduct any business of consequence, or to manage his own affairs, and claim the benefit of the provisions of the will for their support and maintenance; and, further, adopt the answer of the executors and trustees as their own.
W. J. Heath answers and alleges that he is entirely competent to manage his own estate; that he has long been in business for himself and has conducted it successfully in the main, and that his losses pointed out in the answers of his codefendants were occasioned by the pronounced policy of deflation after the close of the World War, and the sudden and unlooked-for slump in prices incident thereto, and that defendant's case in this respect was that of large numbers of capable business men at that time, and who had otherwise shown themselves to be thoroughly competent in business matters, and demands that after applying to the payment of his just debts so much of his estate as required for the purpose, that the remainder be turned over to him according to the provisions of his father's will.
It further appears that on leave properly obtained, the First National Bank of Monroe and the Farmers and Merchants Bank of Monroe were *Page 61 
made coplaintiffs, and set up their claims against the Heath Cotton Company and G. B. and W. J. Heath, and demand judgment that the portion of the estate due these parties be applied to plaintiffs' debts.
On full consideration of the record, the court being of opinion that under the will of B. D. Heath the portions due to the two sons, G. B. and W. J. Heath, are available to their creditors, subject to the requirements of a proper administration of their father's estate, it was adjudged that same be so applied and the remainder be turned over to the said defendants.
It further appears from his Honor's decree that should it be found necessary to have them and to incur the expense of such a course, that R. W. Lemonds, C. S.C., has been agreed upon for receiver, and Frank Armfield, Esq., is to act as referee. From the judgment entered, the executors and trustees and others appealed, assigning errors.
On careful perusal of the will of B. D. Heath, and particularly of the clauses above set forth, and more directly pertinent to the inquiry, it appears, in item 13, that it is the purpose and will of the testator that the bulk of his large estate shall be divided into equal shares and a share each given to his surviving widow and his numerous children, payable in due course of administration, except that the executors, as trustees, shall invest and hold the shares of the minors until they become twenty-one, expending the income meantime for their support and maintenance, and except as otherwise provided in the subsequent clauses of the will.
The first of these qualifying provisions is item 14, wherein B. W. Heath, one of the sons, is given his share in absolute ownership, but owing to "his failure up to this time from a financial standpoint," it is not to be paid to him at once and in toto, but "one-fifth shall be paid as soon as practicable and one-fourth of the remainder at the end of every two years until the whole sum is paid: Provided, that in any event the income arising from his share shall be paid to him annually." True, in this item of the will there is a proviso that "If, owing to his habits and general conduct and demeanor, the executors do not deem it to the best interest of the legatee to make these payments to him, then they are authorized to withhold the payment of all or such part of the principal as they deem best, and until such time as they deem *Page 62 
it best to pay it over to him, but in any event the income arising from his share shall be paid to him annually," but while this may confer upon the executors some discretion in the matter, it is merely as to the time of payment; there is here no limitation over, no authority is conferred to use or expend it, principal or interest, for any other purpose; and, as stated, it is clear throughout that with the indefinite exception noted, the testator in this item constituted and intended to constitute his son, B. W. Heath, the vested owner of his share of the estate.
Under item 15 of the will, the powers conferred upon the executors under specified conditions are more extended. It is therein provided that if, at the time of the testator's death, or on their coming of age, any of the sons are then incompetent by reason of intemperance, bad habits or other cause, or if the daughters at that time are married to a man who is incompetent, and the executors and trustees so determine, the income or profits of their portion shall be paid over for the support of such child and his family until they consider it prudent to pay them the principal, and they in their judgment are authorized to withhold the principal altogether and pay same to their surviving widows and children, if there be such, etc. Under this item 15, and the conditions referred to, it is not necessary now to determine whether or to what extent the interests of the beneficiary may be made available to creditors, but there is manifestly substantial difference made and intended in the powers herein conferred upon the trustees and those which were given in item 14, and it is clear, we think, that the takers under item 14 will not be affected by the provisions of the subsequent item, number 15. We must approve, therefore, the interpretation suggested in the thoughtful brief of one of the counsel of appellees, that the will of B. D. Heath in these portions of the will affecting the bulk of his estate, created and intended to create three distinct classes of beneficiaries — those taking under item 13, to be paid in due course of administration and on coming of age; those taking under item 14, and those under item 15 of the will. The position is emphasized by the terms of the first codicil, applicable, as follows: "In item 14, in which is described conditions on which B. W. Heath is to be paid his part, I want the same conditions applied and carried out as to my sons, Harry M. Heath, Gilbert B. Heath, and W. Joe Heath." The last two being the interests involved in this litigation.
This last clause is of itself sufficient to bring the shares of the two present defendants, G. B. and W. J. Heath, under the provisions of item 14, and affords a satisfactory indication of the reasons influencing the mind of the testator concerning them. When the principal will was executed, in 1904, B. W. Heath had arrived at years of discretion and had been engaged in business for himself, and his father, in *Page 63 
consideration of these facts, and having had opportunity to observe and weigh his capacity and disposition, himself determined upon the limitation he deemed proper in reference to his interest. And at the time of the execution of the codicil, five years later, like conditions were no doubt presented as to the three sons, Harry M., G. B., and W. J. Heath, and for like reason the father and testator himself determined the status of their interest, leaving the shares of the other children to the discretion of his executors, as set forth in item 15.
This in our opinion being the correct construction of the will in question, the authorities as they prevail in this jurisdiction are in full support of his Honor's ruling that the shares and interest of these two beneficiaries, G. B. and W. J. Heath, are available to their creditors, and the judgment as entered must be upheld. Vaughan v. Wise. 152 N.C. 31;McMichael v. Hunt, 83 N.C. 344; Pace v. Pace, 73 N.C. 118; Mebane v.Mebane, 39 N.C. 131; Dick v. Pitchford, 21 N.C. 480.
In Dick v. Pitchford, 21 N.C. 480 (1 Devereux Battle's Equity), it was held that: "A deed for land and slaves upon trust, to apply annually the rents and profits to the use and benefit of the cestui que trust, for his life, `so that they shall not be sold or disposed of or anticipated by him,' without giving the estate over in case of an attempted sale of anticipation, does not prevent an assignment of his interest by the cestuique trust; and the assignee has a right to an account of the rents and profits from the time of the assignment; but in such case, if there be ulterior contingent trusts, he has no right to call upon the trustee for the surrender of the possession of the trust property."
This principle was approved and applied to the case of creditors, claimants, in Mebane v. Mebane, supra, wherein it was held:
"A. devised certain property to a trustee, in trust to apply the proceeds to the maintenance of his son, and with a proviso that no part of the property should be subject to the debts of his said son: Held, that this proviso was inoperative, and the creditors of the son had a right to have their claims paid out of the property.
"By the use of no terms or art can property be given to a man, or to another for him, so that he may continue to enjoy it, or derive any benefit from it, as the interest, or his maintenance thereout or the like, and at the same time defy his creditors and deny them satisfaction thereout.
"The only manner in which creditors can be excluded is to exclude the debtor also from all benefit from, or interest in, the property, by such a limitation, upon the contingency of his bankruptcy or insolvency as will determine his interest and make it go to some other person." *Page 64 
And, delivering the opinion, Ruffin, C. J., said: "Then, there is no doubt that the donee, Anderson, has, upon the principles and precedents mentioned, the absolute right to assign his interest in these gifts, and that his assignee would have the right to take the estates under his own control. That being so, it follows that the interest of the cestui quetrust, whatever it may be, is liable in this Court for his debts; for it would be a shame upon any system of law if, through the medium of a trust or any kind of contrivance, property, from which a person is absolutely entitled to a comfortable, perhaps an affluent, support, and over which he can exercise the highest right of property, namely, alienation, and which, upon his death, would undoubtedly be assets, should be shielded from the creditors of that person during his life. There is no such reproach upon nor absurdity in our law; for we hold that whatever interest a debtor has in property of any sort may be reached by his creditors, either at law or in equity, according to the nature of the property. Terms of exclusion of the donee's creditors, not amounting to a limitation of the estate, can no more repel the creditors than a restraint upon alienation can tie the hands of the donee himself. Liability for debts ought to be, and is, just as much an incident of property as the jus disponendi is; for, indeed, it is one mode of exercising the power of disposition."
In Pace v. Pace, supra, Rodman, J., said: "It is settled that by no form of words can property be given to a man or to another, in trust for him, so that he shall not have the right to dispose of his estate in it unless there be in the instrument of gift a proviso that upon an attempted alienation it shall go over to some third person."
In McMichael v. Hunt, supra, Chief Justice Smith refers with approval toDonnell v. Mateer, 40 N.C. 7, in terms as follows: "The case decided in this Court, Donnell v. Mateer, proceeds upon the same principle. The legacy there in question was in these words: `I leave $300 in the hands of my executors to pay out to her (his daughter) as they see that she needs, if my estate will afford it.' Ruffin, C. J., says: `The testator intended perhaps to entrust his executors with a vague sort of discretion as to the time of payment, but not with the discretion of withholding payment altogether. The daughter had the absolute right to demand the whole sum at some time, and therefore it is a vested transmissible legacy.'"
A similar decision was made in the more recent case of Vaughan v. Wise,supra, where full citations from our previous decisions on the subject are given. These earlier cases in support of what has been termed the English Doctrine have been modified to some extent by our statute in relation to spendthrift trusts. C. S., 1742. A perusal of the law, however, will disclose that such trusts are only permissible *Page 65 
for a restricted amount, "an annual income not to exceed $500 net," and by correct interpretation to be applied to the support of the beneficiary for his life only, and has no application to the interests involved in this litigation, coming under item 14 of the will. Fowler v. Webster,173 N.C. 442.
In many of the other States their courts uphold and apply what is known as the American Doctrine, and which under most conditions is not so exigent in favor of the claims of creditors, and the Supreme Court of the United States has expressed approval of this view. But, as heretofore stated, under the law as it obtains in this State, the interest of these defendants, created under item 14 of the will, is clearly subject to just claims of their creditors, and the judgment of the court below to that effect is
Affirmed.
CLARKSON, J., not sitting.