IN THE MATTER OF THE ESTATE OF JOHN C. BULIS—WACHOVIA BANK & TRUST COMPANY, SURVIVING TRUSTEE.

(Filed 9 July, 1954.)

1. **Wills § 33d: Trusts § 3a—Recommendation to life beneficiary as to use of funds held precatory and did not create trust.**

The will in suit set up a trust with provision that the net income therefrom should be paid to testator's widow for life, with further provision that "it is my thought . . . that said net income shall be used for her benefit and for the benefit of" testator's sons, "according to their respective needs, and in the sound discretion of my said wife." *Held:* The recommendation as to using part of the income for the benefit of testator's sons was made exercisable by the widow as an individual and not as cotrustee,

and the recommendation is precatory in nature and does not create a trust, spendthrift or otherwise, in favor of testator's sons.

**2. Trusts § 19b: Estates § 9e—**

The testamentary trust in question provided that testator's widow receive the net income for life, and at her death the residue should be divided into trusts for the benefit of testator's sons. *Held:* The undistributed income of the trust which accumulated during the life of the widow belonged to her estate and not to the trusts created for the benefit of the remaindermen.

**3. Corporations § 16—**

The declaration of a cash dividend by a corporation creates a debt from the corporation to each of its stockholders who then hold such stock.

**4. Trusts § 19b: Estates § 9e—**

Where dividends are declared on stock held by a trust for payment to stockholders on designated dates which fall prior to the death of the life beneficiary of the trust, such dividends belong to the estate of the life beneficiary, and this is so whether the dividends be received before or after the death of the life beneficiary.

**5. Trusts § 19c—Sum paid to remainderman out of life tenant's income held advancement chargeable to his interest.**

Trustor's widow, who was cotrustee and life beneficiary of the income from the trust, was given power at her pleasure and discretion to use part of the income for the benefit of testator's sons according to their respective needs. By later provision the trustees were authorized to use a part of the *corpus* if advisable for the maintenance of the widow or sons, or the education of the sons. The widow directed her cotrustee to advance one of the sons a stipulated sum to be charged to any funds which such son should be entitled from the testamentary trust, and the son agreed to repay said sum out of such funds. The sum paid such son was withdrawn from the accumulated income rather than the *corpus*. *Held:* The sum paid the son represented an advancement to him and should be charged to the trust fund established for his benefit as remainderman, and should be credited to the accumulated income account for payment to the executor of the widow.

APPEAL by respondents John B. Bulis and Charles R. Bulis from *Sink, J.,* at December Term, 1953, of BUNCOMBE.

Petition by Wachovia Bank and Trust Company, surviving trustee under the will of John C. Bulis, deceased, for advice and instruction and for approval of its final account as surviving trustee of the trust for the benefit of testator's widow, Pansy Bulis, now deceased.

John C. Bulis died 3 August, 1941. By the terms of his will he devised and bequeathed the bulk of his estate to Wachovia Bank and Trust Company and his widow, Pansy Bulis, as trustees, in trust as declared in various items of the will.

The item of the will immediately in question is Item Nine by which the testator directed that (subject to a small bequest to David Cummings

which in nowise affects decision here) the trustees "pay the net income of this trust estate, in convenient installments, preferably monthly, to my said wife, Pansy Bulis, as long as she shall live. This provision, and others contained in this will for the benefit of my wife, are being made in lieu of dower and all other statutory rights. It is my thought, in which my wife concurs, that said net income shall be used for her benefit, and for the benefit of my son, Byron F. Bulis, and of my adopted sons, John Byron Bulis and Charles Bulis, from time to time according to their respective needs, and in the sound discretion of my said wife; but in the event that my said wife, by reason of serious illness, or other cause, shall become unable to see to the use of said net income as herein contemplated, then my said trustees are authorized from time to time, as they may deem it necessary and proper, to use a portion or portions of said net income for the support and maintenance of my said son, Byron F. Bulis, and if in the opinion of my said trustees their situation demands it, a portion or portions of said net income for the benefit of my adopted sons, John Byron Bulis and Charles Bulis,' always retaining, however, a sufficient portion of said net income for the use and benefit of my said wife."

By the terms of Item Eleven of the will it is directed that upon the death of the widow, Pansy Bulis, "the residue" of the "trust estate shall be divided into separate shares or trusts" and administered for the benefit of Byron F. Bulis, John Byron Bulis, and Charles Bulis. (The terms of these trusts for the benefit of the three sons of the testator and the directions as to administration thereof are omitted as not pertinent to decision.)

Among the other items of the will which bear on the contentions of the parties are these:

"Item Seventeen. If at any time during the continuance of the trust or trusts herein created, it is necessary or advisable to use some portion of the principal thereof for the maintenance, welfare, comfort or happiness of my wife, Pansy Bulis, or my son, Byron F. Bulis, or my adopted sons, John Byron Bulis and Charles Bulis, or for the education of either of said adopted sons, my trustees are hereby authorized and empowered to use so much of the principal as in their opinion is necessary or advisable to be used to meet such conditions, provided that said trustees deem that the purpose for which such payments are to be made justified the reduction of the principal in the trust estate. Such payments as are made to my wife, Pansy Bulis, under the provisions of this Item, shall be charged to the general trust, but any such payments as may be made to or for the benefit of my son, or either of my adopted sons, shall be charged to their share or trust, or, if made within the lifetime of my wife, shall be kept separate upon the records of the trustees, and at the time of the setting up of the separate trust for said son, and the adopted sons, as

herein provided, shall be charged without interest against the trust or share of the beneficiary for whose benefit the payment was made."

"Item Eighteen. Neither the principal nor the income of this trust estate shall be liable for the debts of any beneficiary thereof, nor shall the same be subject to seizure by any creditor of any beneficiary under any writ or proceeding at law or in equity, and no beneficiary hereunder shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his interest in the trust estate, or the income produced therefrom, prior to the actual distribution thereof by the Trustee to such beneficiary."

Pansy Bulis died 25 August, 1953. At that time a surplus of net income from the trust had been accumulated by the trustees amounting to $34,849.92. This sum was in a separate account maintained by the trustees and had never been paid over or disbursed to the life beneficiary, Pansy Bulis.

Between the date of the death of Pansy Bulis (25 August, 1953) and 19 October, 1953, the surviving trustee credited the income account with further sums which with the previous balance of $34,849.92, after payment of the costs of administering the trust, makes a total accumulated income account for distribution of $44,529.45. This latter net credit of $9,679.53 includes the collection of certain dividends declared before the death of the life beneficiary, Pansy Bulis, on corporate stocks held by the trust. It also includes a proposed refund of $5,000 advanced from the accumulated income account to John B. Bulis during the life of Pansy Bulis, this proposed refund to be effected by charging the *corpus*-trust account of John B. Bulis with the item of $5,000 and crediting it to the accumulated income account.

The surviving trustee in its final account submitted to the court in connection with the petition for advice and instruction proposes to pay the accumulated income balance of $44,529.45 to the Wachovia Bank and Trust Company as executor under the will of Pansy Bulis.

The respondents John B. and Charles Bulis filed answers denying the right of the surviving trustee to include in the income account (1) the dividends collected after the death of Pansy Bulis, and (2) the John B. Bulis refund item. These respondents also deny that the estate of Pansy Bulis is entitled to receive any part of the proceeds of the accumulated income account. To the contrary they aver that this fund should be held in trust for them and for B. F. Bulis as remaindermen under the terms of the will of John C. Bulis. The respondent B. F. Bulis filed answer admitting the correctness of the accumulated income account of $44,-529.45 but averring that the trustee should pay over or hold this fund to or for the use and benefit of the three remaindermen, B. F., John B., and Charles R. Bulis.

By written stipulation of all interested parties certain facts were agreed upon before the cause was first heard below. The facts agreed may be summarized as follows:

1. That the corporate dividends in dispute, amounting to $4,355.00, were declared by the boards of directors of the respective corporations for payment to stockholders of record on designated dates, which dates were prior to the death of Pansy Bulis, but the dividends were not actually received by the surviving trustee until after her death.

2. That the $5,000 item charged by the surviving trustee against the *corpus* account of John B. Bulis and credited to the accumulated income account arose out of these facts:

(a) On 13 December, 1952, Pansy Bulis, beneficiary and co-trustee of the trust, addressed to her co-trustee, Wachovia Bank and Trust Company, a letter reading as follows:

"This letter will be your authority from me to advance to John B. Bulis the sum of $5,000.00 from the funds of the testamentary trust estate of John C. Bulis, deceased.

"At the time of the payment of the above sum of money to John B. Bulis, I will thank you to take from him a letter authorizing you to deduct the amount of $5,000.00 from any funds which may be payable to John B. Bulis from the assets of the testamentary trust established by John C. Bulis, deceased, and now under your management as Trustee of said estate or from any other funds in your hands to which John B. Bulis may be entitled, to the end that said sum of money may be restored to said trust and be distributed according to the provisions thereof."

(b) On 16 December, 1952, John B. Bulis addressed to Wachovia Bank and Trust Company a letter reading as follows:

"In consideration of the sum of $5,000.00 advanced to me from the trust estate of John C. Bulis, deceased, as authorized by a letter addressed to you by Mrs. Pansy Bulis, the receipt of which is hereby acknowledged, I hereby agree and bind myself to repay said sum of money out of any funds which may be at any time payable to me from the estate of the said John C. Bulis, deceased, or any other funds to which I may be entitled from any other source, and I hereby irrevocably authorize you to withhold the sum of $5,000 which may at any time be payable to me or to my estate from the funds of the estate of John C. Bulis or Mrs. Pansy Bulis."

(c) Pursuant to the foregoing letters Wachovia Bank and Trust Company as trustee of the John C. Bulis trust, paid to John B. Bulis the sum of $5,000 out of the accumulated and undistributed income held by it as trustee of the trust.

(d) After the death of Pansy Bulis and on 19 October, 1953, Wachovia Bank and Trust Company, as surviving trustee, charged the distributive

share of the *corpus* of the trust due John B. Bulis with the sum of $5,000 and credited the income account of the trust with that sum in settlement of the advancement made to John B. Bulis in December, 1952, and this item of $5,000 is a portion of the disputed sum of $44,529.45 referred to in the petition and final report as the accumulated income account which the surviving trustee proposes to pay over to the executor of the estate of Pansy Bulis.

The Clerk of the Superior Court of Buncombe County heard the cause in the first instance and entered an order approving the final account as submitted by the surviving trustee and authorizing payment of the accumulated income balance of $44,529.45 to the executor of the estate of Pansy Bulis. To this order the respondents Byron F., John B., and Charles Bulis excepted and appealed therefrom to the Superior Court.

When the cause came on for hearing in Superior Court, Judge Sink, then presiding, found and concluded that all the disputed item of $44,-529.45 represents income accrued prior to the date of the death of Pansy Bulis and is property belonging entirely to her estate. Whereupon judgment was entered (1) directing payment of the accumulated income balance of $44,529.45 to Wachovia Bank and Trust Company as executor of the estate of Pansy Bulis, and (2) approving the final account as prepared and filed by the surviving trustee and authorizing distribution of the assets of the trust estate in accordance therewith.

From the judgment so entered the respondents John B. Bulis and Charles R. Bulis appealed, assigning errors.

*McLean, Elmore & Martin for Respondent John B. Bulis, appellant.*
*Fisher & Fowler for Respondent Charles R. Bulis, appellant.*
*S. G. Bernard for Wachovia Bank and Trust Company, appellee.*

JOHNSON, J. Does the earned, undistributed net income of the trust which accumulated during the life of Pansy Bulis, life beneficiary of the trust, belong to her estate or does this fund belong to the remaindermen of the trust, namely: the testator's son B. F. Bulis, and his adopted sons, John B. Bulis and Charles R. Bulis? This is the first question presented by the appeal.

Decision as to this question is controlled by the language of Item Nine of the will. This item directs the trustees to pay the net income of the trust to "Pansy Bulis, as long as she shall live." There is no provision in the will indicating that as to her the trust was intended merely to provide for her upkeep. Nothing is said or intimated that she should be paid only so much of the income as should be needed for her support. The direction that she be paid the net income during the period of her life is without qualification. Nowhere in the will is there any limitation

whatsoever upon the right of Pansy Bulis to receive all the net income of the trust so "long as she shall live." The clear import and meaning of Item Nine is that the gift of income to Pansy Bulis during her life is absolute and complete. The recommendation as to using part of the income for the benefit of the testator's sons "according to their respective needs," is precatory in nature and does not raise a trust, spendthrift or otherwise, in favor of the three sons.

Indeed, the recommendation as to minding the sons' needs is left solely to the "sound discretion" of Pansy Bulis. And this discretion, it is significant to note, was made exercisable by her as an individual and not as a co-trustee of the trust. The conditions under which the trustees were authorized to use income under the provisions of Item Nine, or *corpus* as provided by Item Seventeen, for the benefit of the testator's sons never arose. Therefore, in no aspect of the case are we concerned with the principles of law applicable to discretionary trusts. Accordingly, the authorities cited on that subject are inapplicable and need not be discussed.

The action of the lower court in holding that the undistributed income of the trust which accumulated during the life of Pansy Bulis is an asset of her estate is supported in principle by authoritative decisions of this Court and will be upheld.

In *Mason v. Sadler*, 59 N.C. 148, the testamentary provision involved was: "I lend to my wife, Polly, during her life, all my Negroes . . . and their increase, for the purpose of raising and educating my two sons . . ." After the death of the widow the Negroes were to go to the sons. The sons sought to have the widow declared a trustee for their benefit in the slaves. Said *Manly, J.*, speaking for the Court, pp. 150- 151:

"The question presented by the pleadings is, whether the language used by the testator, Foy Mason, in the first clause of his will, creates a trust, in his wife, of Charles, Clarissa, and Betsy, for the sons, Andrew and Osborne. . . .

"Thus, the equity of the bill rests upon the principle, that the slaves loaned to the wife, for life, was a trust, solely for the benefit of the children during that term. Indeed, that is the leading allegation of the bill. This, we think, is a misconstruction of the will. Considering the clause, in connection with the other bequests of the will, we are of opinion the wife, under the bequest, took an absolute legal estate, and that the words, 'for the purpose of raising and educating my two sons,' have not the effect to qualify that estate. Our interpretation is, that the words mean to give a reason for the gift, and in that way, to suggest and recommend a duty that was incumbent on her."

In *Carter v. Strickland*, 165 N.C. 69, 80 S.E. 961, there was a devise to the testator's niece with this provision: ". . . and it is my request that my said niece . . . shall, at her death, devise said tract of land to her

daughter, Myrtie E. Carter." *Hoke, J.,* speaking for the Court, said in part, pp. 71, 72:

"Some of the earlier English cases, and they have been followed by decisions in this country, are to the effect that a trust will be engrafted or imposed upon an estate, absolute in terms, or upon its holder, by reason of precatory words in a will whenever 'the objects of the precatory language are certain and the subject of the recommendation or wish is also certain'—a position supposed to best effectuate the intent of the testator. A consideration of the later cases, however, will show that, in the decisions referred to, the principle has been too broadly stated, and it is now the prevailing doctrine, certainly so in this jurisdiction, that such words will be given their ordinary significance, and will not have the effect, as stated, unless from the terms and dispositions of the will and the circumstances relevant to its proper construction it clearly appears that they are to be considered as imperative and that the testator intended to create a trust." And again, at p. 74: "On perusal of the will and the facts in evidence, we are of opinion as stated, that plaintiff is entitled to the property in absolute ownership, and that the decree protecting her in the possession and enjoyment of such an estate must be affirmed."

In *Dixon v. Hooker,* 199 N.C. 673, 155 S.E. 567, a bequest was made to the testator's wife "for and during her natural life . . . to have the use and benefit of so long as she lives. . . . My wish and desire is that in the event that my wife should not spend and use all of the personal property mentioned in Item 2 of this will for her support while she lives that she give and bequeath at her death $1,000 in cash or bonds or stock to the Christian Church of Greenville, N. C. . . . and the remainder of the said personal property . . . to my sister . . . but I want my wife to use and spend just as much of said personal property as she desires for her comfort and pleasure." There the Court said in part, pp. 677, 678:

"On the other hand, if the said language is not a limitation over, but is only an expression of the wish and desire which the testator had at the date of the execution by him of his last will and testament, and which he intended that his wife should observe or not, in her discretion, then under *Jordan v. Sigmon,* she was the owner of the property described in the complaint, absolutely, and not for her life only and the judgment of the Superior Court must be affirmed.

"It is clear from the language used by the testator in Item 6 of his last will and testament that he did not give and bequeath to the Christian Church of Greenville, N. C. the sum of $1,000, nor did he give and bequeath to the children of his sister the said property or any part thereof; he was content to express a wish and desire that his wife, Mrs. Gertrude H. Coward, should make these gifts. There was no limitation over of the personal property which he had given and bequeathed to his wife for her

life by Item 2 of his will, for it is manifest that it was not the intention of the testator that the Christian Church of Greenville, N. C., or that the children of his sister should take under his will: at most they were to take from and under his wife, Gertrude H. Coward.

"It is also clear that the testator did not intend by the language used by him to impress upon the title of his wife to the personal property given and bequeathed to her by Item 2 of his will, any trust in favor of the Christian Church of Greenville or of the children of his sister, Gabrella Dixon. Whether or not she should give and bequeath to said church the sum of $1,000, or to said children the remainder of the personal property, given and devised to her by Item 2 of said will, and not used or expended by her during her life, was to be determined by her in the exercise of her discretion. As to the disposition of said personal property after the death of his wife, the testator was content to leave this matter to her discretion, realizing, doubtless, that the conditions under which he made his will might not exist after his death, and while his wife was living."

In *Taylor v. Taylor,* 228 N.C. 275, 45 S.E. 2d 368, a devise of real estate was made to devisees "to do as they like with" the property, with a subsequent provision stating, "I wish that, after my death and the death of the brothers and sisters named in this will, whatever property there is left shall go to my niece, Geneva Taylor Lewis and her husband, Mark Lewis." It was held that the property was owned in fee simple by the beneficiaries first named.

*In re Wilkening's Will,* 137 Misc. 451, 244 N.Y.S. 115, involves a testamentary provision directing payment of income by the trustees to the testator's son's wife, "for his support, during the life of the trust." It was held that the words "for his support" were precatory and that the wife was entitled to the income without restriction.

See also *Slater v. Slater,* 46 Misc. 332, 94 N.Y.S. 900; *Schneiderhahn's Guardian v. Zeller,* 33 Ky. Law Report, 694, 110 S.W. 834; Bogert, Trusts and Trustees, Vol. 1, Sec. 48.

The following cases, which seem to come closest to supporting the appellants' views, are factually distinguishable and for that reason are not considered authoritative here: *Brinn v. Brinn,* 213 N.C. 282, 195 S.E. 793; *Carter v. Young,* 193 N.C. 678, 137 S.E. 875; *Young v. Young,* 68 N.C. 309. See *Brinn v. Brinn, supra,* for clear statement by *Barnhill, J.* (now *C. J.*) of the rules applicable to the interpretation of precatory words in a dispositive instrument. See also 54 Am. Jur., Trusts, Sections 54 to 58.

Also on the question of spendthrift trusts see G.S. 41-9; *Mebane v. Mebane,* 39 N.C. 131; *Pace v. Pace,* 73 N.C. 119; *Bank v. Heath,* 187 N.C. 54, 121 S.E. 24; *Mizell v. Bazemore,* 194 N.C. 324, 139 S.E. 453; Annotation: 119 A.L.R. 31, p. 61.

2. The next question for decision is this: Should the corporate dividends declared and made payable to stockholders of record on dates prior to the death of the life beneficiary, Pansy Bulis, but not actually received by the surviving trustee until after her death, be placed in the earned income account and paid over to the executor of Pansy Bulis, or credited to the accounts of the remaindermen of the trust, namely: the three sons of the testator?

The court below treated these dividends as earned net income belonging to the estate of the life beneficiary, Pansy Bulis, and directed payment to her executor. We approve the ruling below. It is supported by the decided weight of authority in this country. In 13 Am. Jur., Corporations, Sec. 673, it is stated: "It is the general rule that the declaration of a cash dividend, whether on common or preferred stock, creates a debt from the corporation to each of its stockholders who then hold such stock." To like effect see 18 C.J.S., Corporations, Sec. 467. See also Annotation, 60 A.L.R. 703. This is in accord with the decision in *University v. N. C. R. Co.*, 76 N.C. 103, where it is stated, at p. 106: "A dividend declared by and due from a private corporation is a debt due to the shareholder and is recoverable as such."

And coming to the precise point on which decision on this aspect of the case turns, we find this statement of the controlling rule in 33 Am. Jur., Life Estates, Remaindermen, etc., Sec. 285, p. 792: "Remaindermen under a will are not entitled to the income from an estate until after the death of a life tenant, and, moreover, any unpaid balance of income which has accrued to the life beneficiary of a trust which has terminated belongs to the estate of such beneficiary." See *Bank v. Baker,* 124 Conn. 577, 1 A. 2d 283, wherein it is held that any unpaid balance of income accrued to the beneficiary of the trust before its termination belongs to his estate. See also *Trust Co. v. Spiegelberg,* 117 N. J. Eq. 171, 175 A. 164; Annotation, 126 A.L.R. 12, pp. 30, 31.

And as bearing directly on the instant question of corporate dividends, we find this statement of principles in the annotation appearing in 72 A.L.R. 981, p. 982: ". . . it is almost uniformly held, in the absence of applicatory statutory provision to the contrary, that ordinary current dividends are not apportionable, but are payable in entirety to the life tenant if declared, or at least if declared and payable, during the continuance of that interest . . ." See also Annotation, 130 A.L.R. 492.

In *Nutter v. Andrews,* 246 Mass. 224, 142 N.E. 67, it is held that dividends declared before the death of a life tenant, payable after her death, to stockholders of record before her death, go to the estate of the life tenant.

The decisions in *Trust Co. v. Thorner,* 198 N.C. 241, 151 S.E. 263; *Minot v. Tappan,* 127 Mass. 333; *Stempel v. Trust Co.,* 127 Conn. 206,

15 A. 2d 305, and other cases referred to in the annotation appearing in 157 A.L.R. 668, and cited by the appellants, have been examined and considered. They are factually distinguishable and are not considered controlling here.

3. The final question presented for decision is whether the item of $5,000 representing the advancement to John B. Bulis in December, 1952, should be charged to him and credited to the accumulated income account for payment to the executor of Pansy Bulis, as proposed by the surviving trustee. The court below held that the item should be debited and credited as proposed, and we approve. The memoranda signed by the parties when the $5,000 was paid to John B. Bulis clearly shows it was intended as an advancement to be repaid. The fact that the money was withdrawn from the accumulated income, rather than *corpus,* does not change the recipient's obligation to make restitution.

It follows from what we have said that the judgment below is
Affirmed.