ALYCE McDERMOTT QUICKEL AND CITIZENS NATIONAL BANK IN GASTONIA, NORTH CAROLINA, ADMINISTRATOR C.T.A. AND TRUSTEE OF THE ESTATE OF JOHN C. QUICKEL v. JOHN C. QUICKEL, JR. AND TOM C. QUICKEL.

(Filed 29 April, 1964.)

**1. Wills § 39—**

A general devise to testator's wife to have and hold or dispose of as she desires with following provision that "in case of survival of any heir it shall be his and if he does not survive it is my desire that" it go to testator's brother, *is held* to take the fee to the widow under the rule that a general devise with unlimited power of disposition transmits the fee and that a subsequent clause in conflict therewith will be disregarded. G.S. 31-38.

**2. Wills §§ 31, 37—**

In a will, precatory expressions carry their ordinary connotation and do not engraft a trust upon an absolute gift unless it clearly appears from the will and the surrounding circumstances that the words were used imperatively with the intent to create a trust.

**3. Wills § 27—**

The object of testamentary construction is to effectuate the intent of testator as ascertained from the language of the instrument.

**4. Wills § 37 —**

When property is given absolutely a trust will not ordinarily be imposed by later precatory expressions, and if the instrument does not provide

a complete plan for the disposition of the property, it is strong evidence that the words are precatory.

**5. Wills § 29—**

It will be presumed that testator did not intend to die intestate as to any part of his estate.

**6. Wills § 27—**

When a word is used in one part of the will in a certain sense, the same meaning will ordinarily be given the word in construing other parts of the instrument.

**7. Wills §§ 31, 37—**

Testator left certain stock to his wife without reservation but a subsequent sentence stated that it was his desire that the stock be held by a trustee with the income to be paid his wife and at her death to a son so long as he continued his college education and to be the property of the son when he obtained his college degree. *Held:* It being apparant that in another part of the will testator used the words "I desire" solely in a precatory sense and that to construe the bequest as creating a trust might result in partial intestacy, it was the intention of testator to make an absolute gift of the stock to his wife.

APPEAL by the plaintiff Alyce McDermott Quickel and defendant John C. Quickel, Jr. from *Martin, S. J.,* November 1963 Civil Term of GASTON.

Action by the administrator c. t. a. and the widow of John C. Quickel for a declaratory judgment to determine the ownership of certain land and corporate stocks devised and bequeathed by his will. John C. Quickel executed a holographic will on January 3, 1960 and died on May 16, 1960. The beneficiaries interested in the interpretation of this will are his widow, the plaintiff Alyce McDermott Quickel; their son and only child, John C. Quickel, Jr.; and one brother, Tom C. Quickel. All are *sui juris* and parties to the action. A jury trial was waived; the judge heard the evidence, found the facts, and rendered the declaratory judgment prayed in the complaint.

This appeal involves only the construction of paragraph 2 of the will which is as follows:

"2. To my wife Alyce McDermott Quickel the home we have lived in together at 1140 Edgemont Ave. in Gastonia, all of its contents and adjoining real estate. Also I will each piece of real estate recorded in my name in Gaston County to her to have and to hold or dispose of as she desires. In case of survival of any heir it shall be his and if he does not survive it is my desire that my only brother Tom C. Quickel have the above said property. I also will to my wife stocks held in The Waggoner Electric Co.,

The Citizens National Bank, The Drexel Furniture Co., The Carolina Power and Light Co., Iveys Inc., and the Public Service Co. of Gastonia. It is my desire that these be held by The Trust Department of the Citizens National Bank in the form of a Living Trust the income from them to be paid to her as she so desires and at her death to continue in the name of John C. Quickel, Jr. so long as he continues his education and to be his to control at the time of obtaining a college degree."

The residence at 1140 Edgemont Avenue in Gastonia was held by the testator and his wife, Alyce McDermott Quickel, as tenants by the entireties. At his death she became the owner of this property in fee simple as the surviving tenant. The judge held that under the terms of the will she also acquired a fee in the other Gaston County realty of which testator was the record owner at his death. From this ruling John C. Quickel, Jr. appealed contending that the testator had devised the widow a life estate with remainder to him in fee.

Prior to his death, testator had disposed of his stock in Iveys, Inc. His Honor decreed that the plaintiff Citizens National Bank held title to the other stocks listed in paragraph two of the will in trust to pay the income therefrom to the widow during her lifetime. He further held that the question of the disposition of the stocks and the income therefrom following her death was not properly before the court while she lived. The widow appealed from this ruling contending that she acquired these stocks absolutely and free of any trust.

*Garland and Alala by Robert L. Bradley for Alyce McDermott Quickel, plaintiff.*

*J. Samuel Groves for John D. Quickel, Jr., defendant.*

SHARP, J. Testator devised his realty to his wife "to have and to hold or dispose of as she desires." Thereafter he appended the provision that if any heir survive "it shall be his"; if no heir survive, he desired that his brother Tom have the property.

The ruling of the Superior Court that the wife acquired a fee simple estate in the testator's land is in accord with the decisions of this Court. This devise comes within the oft-stated general rule of testamentary construction that an unrestricted or general devise of real property, to which is affixed, either specifically or by implication, an unlimited power of disposition in the first taker, conveys the fee and a subsequent clause in the will purporting to dispose of what remains at his death is not allowed to defeat the devise nor limit it to a life estate. G.S. 31-38; *Walters v. Children's Home*, 251 N.C. 369, 111 S.E. 2d

707; *Taylor v. Taylor,* 228 N.C. 275, 45 S.E. 2d 368; *Burgess v. Simpson,* 224 N.C. 102, 29 S.E. 2d 38; *Heefner v. Thornton,* 216 N.C. 702, 6 S.E. 2d 506; *Peyton v. Smith,* 213 N.C. 155, 195 S.E. 379; *Hambright v. Carroll,* 204 N.C. 496, 168 S.E. 817; *Roane v. Robinson,* 189 N.C. 628, 127 S.E. 626; *Carroll v. Herring,* 180 N.C. 369, 104 S.E. 892; *Griffin v. Commander,* 163 N.C. 230, 79 S.E. 499; *Cf. Andrews v. Andrews,* 253 N.C. 139, 116 S.E. 2d 436. Of course, as Stacy, C.J., pointed out in *Taylor v. Taylor, supra,* "this rule, as well as all rules of construction, must yield to the paramount intent of the testator as gathered from the four corners of the will."

We sustain the trial judge's ruling that plaintiff Alyce McDermott Quickel is the owner in fee simple of the Gaston County realty of which testator was the record owner at the time of his death.

However, his ruling that Citizens National Bank holds title to those stocks listed in paragraph 2 of the will as trustee to pay the income therefrom to Alyce McDermott Quickel for life, leaving the ultimate taker to be determined at her death, presents greater difficulty. The reports contain myriad cases in which ill-advised testators, after giving property to a designated beneficiary, have expressed a desire that it should be handled or disposed of in a particular manner. So, in this case, testator first gives the stocks to his wife unconditionally. In the following sentence he expresses his *desire* that the Bank hold them in trust to pay her the income for life. Is this latter phraseology precatory or imperative?

In a will, precatory expressions carry their ordinary connotation and do not engraft a trust upon an absolute gift unless it clearly appears from the will and the surrounding circumstances that the words were used imperatively with the intent to create a trust. *Rouse v. Kennedy,* 260 N.C. 152, 132 S.E. 2d 308; *In re Estate of Bulis,* 240 N.C. 529, 82 S.E. 2d 750; *Carter v. Strickland,* 165 N.C. 69, 80 S.E. 961. See also *Brinn v. Brinn,* 213 N.C. 282, 195 S.E. 793; *Dixon v. Hooker,* 199 N.C. 673, 155 S.E. 567.

The object of all testamentary construction is to effectuate the intent of the testator; so with "apprehension and misgivings," we face the task of divining what the testator meant by the words he himself penned in attempting to dispose of an estate in excess of $300,000.00, excluding over $45,000.00 in insurance proceeds payable to his wife and son in approximately equal amounts. *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298; *Finke v. Trust Co.,* 248 N.C. 370, 103 S.E. 2d 466.

Many indicia, none alone conclusive, have been suggested and collected to aid the court in determining whether a testator intended to create a binding trust when he used precatory words. *Laws v. Christ-*

*mas,* 178 N.C. 359, 100 S.E. 587; *St. James v. Bagley,* 138 N.C. 384, 50 S.E. 841; 1 Bogert, *Trusts & Trustees,* § 48; Restatement (Second), *Trusts,* § 25. See 54 Am. Jur., *Trusts* § 57; Annot., Precatory Trusts, 107 A.L.R. 896, 70 A.L.R. 326, 49 A.L.R. 10. However, since "no will has a brother," in each case the court must look for help primarily in other parts of the will and in the circumstances attendant upon its execution. *Bank v. Phillips,* 235 N.C. 494, 70 S.E. 2d 509; *Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246. Nevertheless, these guides, culled from the tabulations, seem applicable to the instant case:

1. When property is given absolutely and without restriction, a trust is not to be lightly imposed by later precatory expressions, especially if they are of doubtful meaning.

2. If a gift is bestowed with a suggestion, desire or recommendation of a vague and incomplete plan for the disposition of the property, it is strong evidence that the words were precatory.

Here, if we assume testator's words to be imperative, taken literally, they indicate that he assumed his wife would die before his son (now twenty-two years old) finished his college education for, after providing that she should receive the income for life, he said that the stocks were to become his son's "to control at the time of obtaining a college degree." If the son should predecease the wife or abandon his education without receiving a college degree, testator would have died intestate as to these stocks. The will makes no provision whatever for these contingencies and contains no residuary clause. The presumption is that a testator did not intend to die intestate as to any part of his property. *Trust Co. v. Waddell,* 234 N.C. 454, 67 S.E. 2d 651.

The testator was a doctor who accumulated a substantial estate. Most certainly he was an intelligent man. However, in writing his own will, he stepped outside his specialty. Rationally, he could not have acted on the *positive* assumption that his wife would die before his son finished his education and that his son would eventually get a college degree. His wife is still alive and there is no suggestion that she is not in good health. The will indicates that the testator thought his son could finish college and, with enough incentive, would do so within a reasonable time and at the usual age. The court below made no finding with reference to the son's intentions in this regard. It held that such a determination was unnecessary in this action and delayed any ruling on the ultimate disposition of the stocks and the income therefrom until the death of the widow.

Adverting to other parts of the will, we note that in paragraph 3, testator bequeathed and devised certain realty and stocks valued at

$43,350.00, in addition to his automobiles and office equipment, to his son outright. Following this bequest he said:

> "The United Fund shares in his name the Investors Syndicate investment, the Insurance Annuity with Pilot Life Insurance Co. I desire to be placed in Trust by my Administrator, The Citizens National Bank and the income be paid to John C. Quickel, Jr. so long as he continues his education and to be given to him on the date he receives a college degree."

The testator was powerless to create a trust in the United Fund shares and the proceeds of the insurance policy; so this expression was without legal effect. It comes within the rule that "the testator will not be deemed to have intended a trust as to property which he did not own." 1 Bogert, *Trusts & Trustees* § 48; Restatement (Second), *Trusts* § 25, Illustration 4. It was, therefore, necessarily a suggestion and recommendation only. The testator used the same words, "I desire," in both paragraphs 2 and 3 of his will. We cannot assume that he intended one result in paragraph 2 and another in paragraph 3. "When a word is used in one part of the will in a certain sense, the same meaning, ordinarily, will be given the word in construing other parts of the instrument." 4 Strong, N. C. Index, *Wills* § 27; *Andrews v. Andrews,* 253 N.C. 139, 116 S.E. 2d 436.

It is our opinion that in paragraph 2 the testator most likely used the word *desire* as a suggestion to his wife that she create an *inter vivos* trust to take care of the contingency of her death before their son completed his education. See *Whitley v. McIver,* 220 N.C. 435, 17 S.E. 2d 457.

We hold, therefore, that the words in question were precatory and that plaintiff Alyce McDermott Quickel owns the stocks enumerated in paragraph 2 of the will which testator held at the time of his death, free of any trust whatsoever.

The case is remanded to the Superior Court for judgment in accordance with this opinion.

Error and remanded.