IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-354-2

Filed: 16 April 2019

Bertie County, No. 15-CVS-264

BETTY BURDEN JACKSON, NANCY BURDEN ELLIOTT; JAMES BURDEN, REBECCA BURTON BELL, DARREN BURTON, CLARENCE BURTON, JR. and JOHN BURDEN, Plaintiffs,

v.

DON JOHNSON FORESTRY, INC. and EAST CAROLINA TIMBER, LLC,

and

NELLIE BURDEN WARD, ALBERT R. BURDEN, LEVY BURDEN, CLARENCE L. BURDEN and BRENDA B. MILLER, Other Grandchildren Defendants,

and

EAST CAROLINA TIMBER, LLC, Third-Party/Counterclaim Plaintiff,

v.

ESTATE OF WILLIAM F. BAZEMORE by and through its Executors, NELLIE WARD and TARSHA DUDLEY, and ESTATE OF FLORIDA BAZEMORE by and through its Administrator, MARIA JONES, Third-Party/Counterclaim Defendants.


Appeal by Plaintiffs, appeal by Defendant East Carolina Timber, LLC, and appeal by Third-Party Defendant Estate of Florida Bazemore, all from judgment entered 9 November 2017 by Judge Wayland J. Sermons, Jr., in Bertie County Superior Court. Heard in the Court of Appeals 3 October 2018.

*Hornthal, Riley, Ellis & Maland, LLP, by M. H. Hood Ellis and Casey L. Peaden, for the Plaintiff.*

*Yates, McLamb & Weyher, L.L.P., by Christopher J. Skinner and Denaa J. Griffin, for Defendant Don Johnson Forestry, Inc.*

*McAngus Goudelock & Courie, PLLC, by Elizabeth H. Overmann, and Ward and Smith, P.A., by E. Bradley Evans, for Defendant and Third-Party/Counterclaim Plaintiff East Carolina Timber, LLC.*

*Dixon & Thompson Law PLLC, by Paul Faison S. Winborne, for the Third-Party/Counterclaim Defendant Estate of Florida Bazemore.*

DILLON, Judge.

This is an appeal and cross-appeal by a number of parties from a summary judgment order entered in this case involving alleged damages caused by the unauthorized cutting of timber from a certain tract of land.

## I. Background

In 1982, Z. J. Burden died, bequeathing a large tract of land (the "Property") to his lineal descendants. Specifically, pursuant to Mr. Burden's will, Mr. Burden's five children, or the survivor(s) of them, received a life estate in the Property[1]; and the fee simple remainder interest was held by those grandchildren of Mr. Burden who were alive at the death of the last of Mr. Burden's five children. That is, the Property would not pass in fee simple absolute to Mr. Burden's grandchildren until *all* of his

---

[1] Actually, the terms of Mr. Burden's will provided that the Property would first pass to Mr. Burden's widow for life, before passing to their five children for their lives.

children had died, and would only pass to those grandchildren who survived all of Mr. Burden's five children.

Mr. Burden's will also granted to his children, or the survivor(s) of them, during the life tenancy, the right to sell any timber growing on the Property that was at least twelve (12) inches in diameter for any reason they saw fit, without having to share the proceeds from the sale with the remaindermen-grandchildren.

In early 2014, Florida Bazemore was the sole surviving child of Mr. Burden and, therefore, was the sole owner of the life estate in the Property. After entering a nursing home, Mrs. Bazemore signed a General Power of Attorney, naming her husband, William Bazemore, and two others as her attorneys-in-fact.

Shortly thereafter, Mr. Bazemore entered into a broker's agreement with Defendant Don Johnson Forestry, Inc. (the "Broker"), to procure a buyer for the timber growing on the Property. The Property had not been timbered since the mid-1980's. The Broker procured an offer from Defendant East Carolina Timber, LLC, (the "Timber Buyer") to purchase the timber growing on the Property.

In March 2014, Mr. Bazemore signed an agreement to sell the timber growing on the Property to the Timber Buyer.

During the summer of 2014, the Timber Buyer cut a number of trees from the Property, paying $130,000; $122,000 of this money was paid to the Bazemores, and the remainder was paid to the Broker for its brokerage commission.

In May 2015, Mr. Bazemore died. Two months later, in July 2015, Mrs. Bazemore died. Upon her death, the Property passed to Mr. Burden's then-living grandchildren *per stirpes* in fee simple absolute.

In October 2015, several of Mr. Burden's grandchildren[2] (the "Grandchildren") commenced this action against the Broker and the Timber Buyer for cutting timber from the Property during Mrs. Bazemore's life tenancy. The Grandchildren sought double the value of the timber cut, pursuant to N.C. Gen. Stat. § 1-539.1.

The Broker and Timber Buyer each answered denying liability. And the Timber Buyer asserted a third-party complaint against the estates of Mr. and Mrs. Bazemore's estates for indemnity.

In November 2017, after a hearing on summary judgment motions, the trial court entered a summary judgment order, which did three things: (1) it granted the Broker's motion for summary judgment, thereby dismissing the Grandchildren's claims against it; (2) it granted the Grandchildren's motion for summary judgment on their claims against the Timber Buyer, awarding $259,596 in double damages; and (3) it granted the Timber Buyer's motion for summary judgment against Mr. and Mrs. Bazemore's estates for indemnity. Each part of the summary judgment order was timely appealed. For the reasons stated below, we affirm in part, reverse in part, and remand for further proceedings, as detailed in Section III (Conclusion) below.

---

[2] The remaining grandchildren were subsequently made parties, denominated in the caption as "Other Grandchildren Defendants."

II. Analysis

A. Mrs. Bazemore's Rights in the Trees During Her Life Tenancy

Rights in a particular piece of property have been described as a "bundle of sticks"[3] or "bundle of rights,"[4] where various people/entities could own different rights in that property. These rights include the right to timber the property.

Mr. Burden, as the fee simple absolute titleholder, owned substantially all of the "sticks" or "rights" in the Property. When Mr. Burden died, he left some of the "sticks" to Mrs. Bazemore, as a life tenant, and other "sticks" to the Grandchildren, as remaindermen. Important to the present case are the sticks owned by Mrs. Bazemore and by the Grandchildren relating to the timber on the Property.

Mr. Burden bequeathed to Mrs. Bazemore a life estate, which carries with it some rights in the trees. Specifically, our Supreme Court has held that, absent some other express grant, a life tenant's right to cut timber from her land is limited. That is, a life tenant is allowed to "clear tillable land to be cultivated for the necessary support of [her] family," and she may "also cut and use timber appropriate for necessary fuel" or to build structures on the property. *Dorsey v. Moore*, 100 N.C. 41, 44, 6 S.E. 270, 271 (1888). Further, a life tenant is permitted to harvest and sell sufficient timber needed to maintain the property. *Fleming v. Sexton*, 172 N.C. 250,

---

[3] *See U.S. v. Craft*, 535 U.S. 274, 278 (2002); *Everett's Lake Corp. v. Dye*, ___ N.C. App. ___, ___ n.1, ___ S.E.2d ___, ___ n.1, 2018 WL 4996362 (2018).

[4] *In re Greens of Pine Glen*, 356 N.C. 642, 651, 576 S.E.2d 316, 322 (2003).

257, 90 S.E. 247, 250 (1916). However, a life tenant commits waste if she cuts timber "merely for sale,--to sell the timber trees, and allow them to be cut down and manufactured into lumber for market[:]"

> It would take from the land that which is not incident to the life-estate, and the just enjoyment of it, consistently with the estate and rights of the remainder-man or reversioner. The law intends that the life-tenant shall enjoy his estate in such reasonable way as that the land shall pass to the reversioner, as nearly as practicable unimpaired as to its natural capacities, and the improvements upon it.

*Moore*, 100 N.C. at 44, 6 S.E. at 271 (citations omitted).[5]

Mr. Burden, however, bequeathed to Mrs. Bazemore more "sticks" in the timber than that normally held by a life tenant, as was his right as the fee simple owner. *See Fletcher v. Bray*, 201 N.C. 763, 767-68, 161 S.E. 383, 385-86 (1931). Specifically, in addition to bequeathing to Mrs. Bazemore the "sticks" in the timber normally reserved for a life tenant, Mr. Burden bequeathed to Mrs. Bazemore the *unfettered* right to cut and sell any tree with a diameter of twelve (12) inches or more (hereinafter the "Large Trees") during her life tenancy. This arrangement was similar to that in *Fletcher v. Bray*, where the fee simple owner bequeathed a life estate

---

[5] In an opinion written by Judge John Haywood in 1800, the Court of Conference, which was our State's appellate court prior to the establishment of our Supreme Court in 1818, defined waste by a life tenant as "an unnecessary cutting down and disposing of timber, or destruction thereof upon wood lands, where there is already sufficient cleared land for the [life tenant] to cultivate, and over and above what is necessary to be used for fuel, fences, plantation utensils and the like[.]" *Ballentine v. Poyner*, 3 N.C. 268, 269 (1800).

in certain property to his wife *and* the right to dispose of the trees thereon *for any reason* during her life tenancy, with the remainder to his nephews and nieces in fee simple. *Id.* Our Supreme Court held that this arrangement was lawful:

> The court holds the opinion that the standing timber was severed by the testator from the fee and the absolute dominion thereof given the wife, and such severance was designed for her benefit rather than for the benefit of [the remaindermen]. Therefore, [wife], upon the sale of the timber, was entitled to hold the proceeds in her own right as her own property [and had the right to bequeath the proceeds as she saw fit].

*Id.* at 768, 161 S.E. at 386.

Therefore, Mrs. Bazemore had the unfettered right *during her life tenancy* to profit from any Large Tree, pursuant to Mr. Burden's will. However, her right to the smaller trees during her life tenancy was limited to that of a life tenant.

### B. The Grandchildren's Right to Seek Relief as Remaindermen

Where there is an unauthorized cutting of trees during a life tenancy, the remaindermen may seek relief. But the type of relief that a remainderman can seek depends on whether his interest is vested or contingent.

Our Supreme Court has held that a *vested* remainderman or reversioner has many remedies. Specifically, he "has his election either to bring trover for the value of the tree after it is cut, or an action [for trespass] on the case in the nature of waste, in which, besides the value of the tree considered as timber, he may recover damages for any injury to the inheritance which is consequent upon the destruction of the tree."

*Burnett v. Thompson*, 51 N.C. 210, 213 (1858).  Indeed, the right to bring an action for waste has been codified in Chapter 1, Article 42 of our General Statutes.  *See* N.C. Gen. Stat. § 1-42 (2017).

However, owners of a *contingent* future interest "cannot recover damages for waste already committed, [but] they are entitled to have their [contingent] interests protected from [future] threatened waste or destruction by injunctive relief." *Gordon v. Lowther,* 75 N.C. 193, 193 (1876);  *see also Peterson v. Ferrell*, 127 N.C. 169, 170, 37 S.E. 189, 190 (1900) (holding that both vested and contingent remaindermen have the right to seek an injunction to protect against future waste); *Edens v. Foulks*, 2 N.C. App. 325, 331, 163 S.E.2d 51, 54 (1968) (stating that "[i]t is well settled in this State, as in other states, that a contingent remainderman is entitled to an injunction to prevent a person in possession from committing future waste").

In the present case, the Timber Buyer argues that the Grandchildren have no standing to sue *for damages* because they were mere contingent remaindermen when the trees were cut.  Indeed, their interest was contingent on their surviving Mrs. Bazemore.  We conclude, though, that it is irrelevant whether the Grandchildren's remaindermen interest in the Property may have been contingent under Mr. Burden's will:  They did not bring suit until after Mrs. Bazemore's death, after their interest became a *vested* fee simple interest.  Though neither party cites a case on point on this issue, we conclude that once a contingent remainderman's interest vests,

he may bring suit for damages, even for acts committed during the life tenancy. Indeed, in discussing the limited right of a contingent remainderman to seek only injunctive relief, our Supreme Court stated that a contingent remainderman "could not maintain [an] action [for damages] *during the life of the first taker*." *Latham v. Roanoke R. & Lumber Co.*, 139 N.C. 9, 51 S.E. 780, 780 (1905) (emphasis added). Our Supreme Court reasoned that, during the life tenancy, it is impossible to know what, if any, damage any particular contingent remainderman will suffer or which remainderman will vest and actually will suffer the damage. *Id.* at 11-12, 51 S.E. at 780-81.[6] But once the life tenancy terminates, this concern disappears.[7]

Further, our General Assembly has provided that *any* remainderman whose interest has become a vested present interest may sue for damages for timber cut during the preceding life tenancy. N.C. Gen. Stat. § 1-537 (2017) ("Every heir may bring action for waste committed on lands . . . of his own inheritance, as well in the time of his ancestor as in his own.")

---

[6] Our holding on this issue is the rule in other jurisdictions as well. *See, e.g., Fisher's Ex'r v. Haney*, 180 Ky. 257, 262, 202 S.W. 495, 497 (1918) (holding that though a contingent remainderman can only seek injunctive relief during the life tenancy, this limiting rule has no application once the remainderman becomes vested at the death of the life tenant); *In re Estate of Hemauer*, 135 Wis. 2d 542, 401 N.W.2d 27, 1986 Wisc. App. LEXIS 3973, *3 (1986) (holding "that the [contingent] remaindermen's cause of action for waste did not accrue until [the life tenant's] death because the remaindermen had no right to enforce prior to her death").

[7] Neither party makes any argument that the Grandchildren's claims are time-barred, and it does not appear that they are. But we note that claims of a remainderman for waste committed during the life tenancy but brought after the death of the life tenant may be time-barred. *See, e.g., McCarver v. Blythe*, 147 N.C. App. 496, 499, 555 S.E.2d 680, 683 (2001).

Therefore, we conclude that the Grandchildren do have standing to seek relief for damage caused by any unauthorized cutting of timber on the Property which occurred during Mrs. Bazemore's life tenancy.

## C. The Large Trees

The Grandchildren argue that they are entitled to damages for the trees which were cut, contending that the contract between Mr. Bazemore (purportedly signed on behalf of Mrs. Bazemore) and the Timber Buyer was not validly executed.

We conclude that the Grandchildren have no claim regarding the Large Trees. Even if the contract was not valid, any claim pertaining to the cutting of Large Trees, which occurred during the life tenancy of Mrs. Bazemore, belonged to Mrs. Bazemore alone, and now to her estate. That is, the Large Trees belonged to Mrs. Bazemore during the life tenancy pursuant to the express grant in Mr. Burden's will, and they were severed from the property during the life tenancy. Unlike typical remaindermen, because of Mr. Burden's express grant to Mrs. Bazemore (and the other life tenants), the Grandchildren had no rights in the Large Trees during the life tenancy, *see Fletcher*, 201 N.C. at 768, 161 S.E. at 386; and, therefore, they had no rights in the Large Trees which were severed from the Property during the life tenancy. Therefore, assuming that the Large Trees were cut without Mrs. Bazemore's authorization, it is Mrs. Bazemore who suffered. The Grandchildren can make no claim for waste of their inheritance since Mr. Burden had "severed" the

Large Trees from the fee that they were entitled to inherit. *Id.* And they have no claim for trover, as the Large Trees, once cut, belonged to Mrs. Bazemore.

### D. The Small Trees

We conclude that the Grandchildren are entitled to any damage caused by the cutting of trees less than twelve (12) inches in diameter (hereinafter the "Small Trees") by the Timber Buyer. Mrs. Bazemore's interest in the Small Trees was only that of a life tenant, as Mr. Burden did not expressly grant her any additional rights in the Small Trees in his will. And there was no evidence offered at summary judgment suggesting that the Small Trees were cut for any reason other than for profit, which, as explained above, is not permissible for a life tenant to authorize.

The Timber Buyer argues that it is entitled to summary judgment, in any event, because the Grandchildren failed to put on any evidence showing that any of the trees cut by the Timber Buyer were, in fact, Small Trees. However, we conclude that there was *enough* evidence presented to survive summary judgment on this point. Specifically, the contract with the Timber Buyer provided that the Property would be "clear cut," suggesting that *all* of the marketable trees on the Property would be cut, not just the Large Trees. Further, there is evidence which identifies the types of trees actually cut by the Timber Buyer, including trees used for "pulp" and "chip-in-saw." Such are typically made from smaller trees, less than twelve (12) inches in diameter.

It certainly would have been better if the Grandchildren had offered an affidavit of a witness who expressly stated that at least one Small Tree was cut. However, we conclude that the record was sufficient to create an issue of fact that at least one Small Tree was cut, and therefore sufficient to reach the jury on the question of damages.

### E. Approval for Sale

The Grandchildren contend that Mrs. Bazemore, in fact, did *not* have the authority to direct the cutting of *any* trees because she failed to *first* procure the permission of Mr. Burden's executors and the executors' attorneys to do so. The Grandchildren point to Item #5 of Mr. Burden's will, which states as follows:

> During the life time of my wife and children, they may sell merchantable timber not less than twelve inches in diameter, . . . without Court order and without my grandchildren sharing in the proceeds of the sale of the timber. *Any timber sale made by my children shall be approved by all of them and my executors, as well as the attorneys for my Executrices.*

(Emphasis added).

When the language of a will is not clear and unambiguous, it is the duty of the courts to construe the meaning of the will. *Pittman v. Thomas*, 307 N.C. 485, 492, 299 S.E.2d 207, 211 (1983). Our Supreme court has long held "that the primary object in interpreting a will is to give effect to the intention of the testator[.]" *Misenheimer v. Misenheimer,* 312 N.C. 692, 696, 325 S.E.2d 195, 197 (1985). The intent of the

testator is to be "ascertained from the four corners of the will," as the best evidence of the testator's intent is the words on the page. *Wachovia Bank & Tr. Co. v. Shelton*, 229 N.C. 150, 155, 48 S.E.2d 41, 44 (1948). For the reasons stated below, we disagree with the Grandchildren's argument.

It could be argued that the italicized sentence in the above passage from Mr. Burden's will is ambiguous. For example, the provision could be construed as *a directive* to the executrices and their attorneys not to stand in the way of, but rather to cooperate with, the children's exercise of their right to cut the Large Trees. Or the provision could be construed to mean that the executrices and their attorneys had some bigger role in the decision-making process.

We conclude that Mr. Burden did not intend to grant to his executrices and their attorneys any *discretion* to veto the children's exercise of their right to profit from the cutting of the Large Trees. Rather, a better reading is that Mr. Burden wanted his executrices and their attorneys to be involved to make sure that any exercise of the children's right was carried out in conformance with the terms of his will. Therefore, any failure by Mrs. Bazemore to obtain approval was harmless with respect to the cutting of the Large Trees, because Mr. Burden's executrices and their attorneys had no discretion to withhold their consent in this regard.

Additionally, when the trees were being cut, Mr. Burden's estate had long since been closed. And, in any event, Mrs. Bazemore was the only surviving child and

executrix. That is, Mr. Burden named his widow and Mrs. Bazemore as executrices, and Mr. Burden's widow had already died when the trees were cut.

In conclusion, in this opinion, we are recognizing that the Grandchildren have a claim for the Small Trees that were cut. However, we conclude that the Grandchildren's argument concerning the language in Item #5 does not give rise to a claim concerning the Large Trees. We construe that, pursuant to Item #5, Mrs. Bazemore had the right to cut the Large Trees for her benefit and that no one had the right to veto her exercise of this right. Any failure by her to obtain the approval of some third party was harmless with respect to the cutting of the Large Trees.

## F. Liability of Timber Buyer

Our Supreme Court has held that a third party may be liable for wrongfully cutting timber to a remainderman whose interest has vested, specifically, for trover (the value of the trees) or for "an action on the case in the nature of waste" (the damage to the land). *Burnett*, 51 N.C. at 213.

Our Supreme Court has held that even if the third party contracts with the life tenant to cut timber, the third party is still liable to the remaindermen if any cutting is unauthorized. *Dorsey*, 100 N.C. at 45, 6 S.E. at 272. It is no excuse that the third party acted under a contract with the life tenant, where the life tenant, otherwise, had no right to have the timber cut:

> The judgment, it seems, is founded upon the supposition
> that the contract between the life-tenant in possession and

the [third party], purporting to give them the right to cut and remove the timber, had the legal effect to exempt [the third party] from liability to the [remaindermen] on such account. *This was a misapprehension of the law applicable.*

*Id.*at 45-6, 6 S.E. at 272.

Therefore, we conclude that the Timber Buyer is liable to the Grandchildren for any damage caused by the cutting of the Small Trees.

But we further conclude that the Timber Buyer is not liable for double damages pursuant to N.C. Gen. Stat. § 1-539.1. Specifically, our Court has held that a third party is not liable for double damages under this statute if the third party was not trespassing on the land itself when the cutting occurred. *Matthews v. Brown*, 62 N.C. App. 559, 561, 303 S.E.2d 223, 225 (1983). In *Matthews*, a timber company had the contractual right to enter upon a tract of land and cut some trees, but the evidence demonstrated that the company cut more trees than it was authorized to cut. *Id.* at 560, 303 S.E.2d at 224. We held that the award of damages for the unauthorized cutting of trees was appropriate, but that the doubling of the award was not since the company was lawfully on the land. *Id.* at 561, 303 S.E.2d at 225 (holding that N.C. Gen. Stat. § 1-539.1 does not apply unless the defendant was a "trespasser to the land"). In the present case, the Timber Buyer was authorized by Mr. Bazemore, who was acting within his apparent authority as Mrs. Bazemore's agent, to enter the Property and was therefore not a trespasser.

G. Indemnity from the Estates of the Bazemores

The trial court concluded that the estates of Mr. and Mrs. Bazemore are liable to indemnify the Timber Buyer, as a matter of law. We agree.

As to Mrs. Bazemore's liability, the third party may be entitled to indemnity from the life tenant with whom he contracted. N.C. Gen. Stat. § 1-539.1(c). And, here, we conclude that the evidence establishes, as a matter of law, that Mr. Bazemore was acting as Mrs. Bazemore's agent when he contracted with the Timber Buyer.

As to Mr. Bazemore's liability, our Supreme Court has held that "[a]n agent who makes a contract for an undisclosed principal is personally liable as a party to it unless the other party had actual knowledge of the agency and of the principal's identity." *Howell v. Smith*, 261 N.C. 256, 258-59, 134 S.E.2d 381, 383 (1964).

## H. The Broker

The Grandchildren argue that the Broker, with whom Mr. Bazemore contracted to procure a buyer, was liable to them for any unauthorized cutting.

The trial court held that the Broker was not liable, as a matter of law. We agree. Section 32A-40[8] of our General Statutes provides that a person who relies in good faith on a power of attorney is not responsible for the misapplication of property, even where the attorney-in-fact exceeds or improperly exercises his authority.

---

[8] N.C. Gen. Stat. § 32A-40 (2017) has since been re-codified as N.C. Gen. Stat. § 32C-1-119(c), effective as of 1 January 2018.

Here, there was no evidence of actionable negligence or bad faith on the part of the Broker. The evidence shows that the Broker reasonably acted in good faith to ensure that Mr. Bazemore had the authority to sell the timber on the Property: Mr. Bazemore assured the Broker of his authority to sell all of the timber on the Property; the Broker spoke to the Bazemores' attorney to confirm Mr. Bazemore's authority to sell the timber; the Broker communicated with all of Mrs. Bazemore's attorneys-in-fact; and the Broker checked the tax card to ensure that Mrs. Bazemore was the record owner of the Property. We believe that it is too much to ask this Broker, who is not an attorney, to have reviewed Mr. Burden's will and to have done any more to understand the exact rights Mrs. Bazemore had in the trees on the Property.

## III. Conclusion

The Grandchildren were entitled to summary judgment on the issue of *liability* against the Timber Buyer for damages caused by any Small Trees cut from the Property. Therefore, that portion of the summary judgment order is affirmed.

There is, however, a genuine issue of material fact as to the *damages* suffered by the Grandchildren for the Small Trees which were cut. Therefore, we reverse that portion of the summary judgment order granting the Grandchildren judgment as to the amount of damages, and we remand this issue for trial.

As the issue of damages has yet to be decided, we vacate that portion of the summary judgment order awarding costs to the Grandchildren from the Timber Buyer. The trial court may consider this issue at the conclusion of the trial.

The Timber Buyer is not liable to the Grandchildren for any Large Trees as a matter of law. Therefore, we reverse that portion of the summary judgment order granting the Grandchildren judgment on liability and for damages as to the Large Trees, and we remand with instructions to enter summary judgment for the Timber Buyer on this issue.

The Timber Buyer is not liable to the Grandchildren pursuant to N.C. Gen. Stat. § 1-539.1 for double damages, as a matter of law, for any damages which may be found for the cutting of the Small Trees. Therefore, we reverse that portion of the summary judgment order granting summary judgment for the Grandchildren on this issue, and we remand with instructions to enter summary judgment for the Timber Buyer on this issue.

The estates of Mr. and Mrs. Bazemore are liable to the Timber Buyer for indemnity for any liability of the Timber Buyer to the Grandchildren for damage caused by any wrongful cutting of the Small Trees, as a matter of law. And the trial court properly awarded costs to the Timber Buyer. Therefore, we affirm those portions of the summary judgment order.

The Broker is not liable to the Grandchildren for any of the trees cut by the Timber Buyer, as a matter of law. And the trial court properly awarded costs to the Broker. Therefore, those portions of the summary judgment order are affirmed.

AFFIRMED IN PART, REVERSED IN PART, REMANDED IN PART.

Judges STROUD and BERGER concur.